UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

TAYLOR, BEAN & WHITAKER MORTGAGE CORPORATION, a Florida corporation,

Plaintiff,

v. Case No. 5:05-cv-260-Oc-10GRJ

GMAC MORTGAGE CORPORATION, a Pennsylvania corporation,

Defendant.

_____________________________________/

# ORDER

Pending before the Court is Defendant's Motion To Dismiss Or, In the Alternative, Motion To Transfer Venue (Doc. 10) to which Plaintiff has filed a Memorandum In Opposition. (Doc. 13.)[1] For the reasons discussed below, Defendant's Motion to Dismiss (Doc. 10) is due to be **DENIED** with respect to Defendant's motion to dismiss or transfer venue and is due to be **GRANTED** with respect to Defendant's Motion to Dismiss Plaintiff's claims in Counts II, III and IV of the Complaint.

## I. BACKGROUND AND FACTS

The relevant facts, as discerned from the Complaint and supporting materials filed by the parties, reveal the following details. Plaintiff, Taylor, Bean & Whitaker Mortgage Corporation ("TBW" or "Plaintiff") is a corporation organized and existing

---

[1] Defendant filed a Counterclaim Against Plaintiff (Doc. 28) to which Plaintiff filed an Answer. (Doc. 30.) Plaintiff has also filed a pleading entitled" First Amended Counterclaims," which raises additional claims under an agreement between the parties entered into in 2000, as well as claims relating to a guaranty provided to GMAC by a third party. (Doc. 38.) The instant Motion to Dismiss relates solely to Defendant's challenge to venue and Defendant's challenges to the sufficiency of the claims for promissory estoppel, unjust enrichment, and conversion asserted in Plaintiff's initial Complaint (Doc. 1). Accordingly, this Order address only the issues raised in the Motion to Dismiss.

under the laws of Florida with its principal place of business in Ocala, Florida.[2]  Plaintiff is in the business of providing residential mortgage lending services and is licensed to do so in several states.[3]  Defendant, GMAC Mortgage Corporation ("GMAC" or Defendant) is a corporation organized under the laws of the State of Pennsylvania with its principal place of business in Horsham, Pennsylvania.[4]

On May 31, 2002, Defendant GMAC entered into a loan service sale agreement (the "Agreement")  with Plaintiff TBW whereby Defendant agreed to purchase from Plaintiff all rights, title, and interest in and to the servicing of certain mortgage loans with a collective aggregate outstanding principal balance of $1,916,000,000.00.[5] The Agreement provided that Defendant would withhold approximately $8,386,000.00 from the total purchase price until the later of (i) 120 days after the transfer date of these loans, (ii) the date of Defendant's receipt of the initial shipment of the mortgage loan files, (iii) the receipt of all remaining complete mortgage loan files and documentation, and (iv) verification of the purchase price.[6]  The Agreement also provided that if Defendant did not receive all of the mortgage loan files and documentation within 120 days after the transfer date, the balance of the purchase price would be paid back to Plaintiff on a pro-rata basis which would commence five months following the transfer

---

[2] Doc. 1, Compl. ¶ 3.

[3] Id.

[4] Id. ¶ 4.

[5] Id. ¶ 8.

[6] Id. ¶¶ 9-10.

date.[7] Plaintiff alleges that Defendant has failed to comply with the terms of the Agreement and pay Plaintiff the remaining balance of $8,386,000.00 owed to Plaintiff.[8] Plaintiff also alleges that Defendant's failure to pay the remaining balance has caused damages to Plaintiff by forcing Plaintiff to seek financing from alternative sources to operate and develop its business.

In Count I of its Complaint, Plaintiff purports to allege a claim for breach of contract, contending that Defendant failed to pay Plaintiff the remainder of the purchase price as required under their Agreement. In Count II, Plaintiff asserts a claim under a theory of promissory estoppel, claiming that it relied upon Defendant's promise to pay Plaintiff the full amount of the purchase price and as a result it has been injured by Defendant's failure to fulfill its promise. In Count III, Plaintiff purports to allege a claim for unjust enrichment against Defendant, contending that Defendant has been unjustly enriched by its retention of the money owed to Plaintiff. Lastly, in Count IV, Plaintiff claims that by wrongfully retaining the remainder of the purchase price owed Plaintiff, Defendant is liable for conversion.

In its Motion to Dismiss (Doc. 10), Defendant requests dismissal of Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(3) because venue is improper here or, alternatively, that the Court transfer venue pursuant to 28 U.S.C. § 1404(a) to the Eastern District of Pennsylvania, the jurisdiction specified in the choice of law and forum selection clauses in the Agreement.  In addition, Defendant also requests the Court to

---

[7] Id. ¶11.

[8] Id. ¶¶ 1-2, 14-15.

dismiss counts II, III, and IV of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) arguing that Plaintiff has failed to state claims upon which relief may be granted.

## II. DISCUSSION

### A. Defendant's Motion To Dismiss For Improper Venue Or Transfer Venue

Because the sole focus of Defendant's motion is premised upon the forum selection clause in the Agreement - and not upon any other defect in venue - the Court must first determine whether Defendant's challenge to venue should be analyzed as a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3) or analyzed as a request for transfer of venue under 28 U.S.C. § 1404(a). The approach which the Court utilizes to address Defendant's challenge to venue is not merely academic. Although the Court must determine the effect of the forum selection clause under either analysis, the forum selection clause is the sole focus of the analysis under Rule 12(b)(3), while there are other factors the Court must also consider under a §1404(a) analysis. Accordingly, the Court will first address whether Rule 12(b)(3) or §1404(a) controls Defendant's request to apply the forum selection clause in the Agreement.

Primarily relying upon *Lipcon v. Underwriters at Lloyd's, London*[9] Defendant argues that motions to dismiss upon the basis of forum selection clauses are cognizable as motions to dismiss for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. While the Defendant is correct that the Court in *Lipcon* permitted the defendant to proceed under Rule 12(b)(3), the *Lipcon* Court did so primarily for the reason that the forum selection clause specified the chosen forum as England, a foreign

[9] 148 F. 3d 1285, 1290 (11th Cir. 1998).

venue. As the Eleventh Circuit properly observed in *Lipcon* "the federal statutory provisions governing transfer of venue from one United States District Court to another . . . do not apply in cases that involve a forum selection clause that requires litigation in another *country.*"[10] Although the Eleventh Circuit has not had an opportunity after *Lipcon* to directly narrow its holding to cases involving a foreign venue in contractual choice of forum clauses, almost all courts that have confronted the issue since *Lipcon* have limited *Lipcon* to cases where the contractual choice of forum is a foreign venue and, therefore, a transfer pursuant to 28 U.S.C. § 1404(a) is unavailable.[11]

The Court agrees that *Lipcon* is limited to situations involving a contractual forum selection clause designating a foreign forum as the proper venue - a situation where the Court cannot enforce the forum selection clause through a transfer of venue.[12] However, where, as here, the contractual forum selection clause designates a federal forum the appropriate procedural mechanism for enforcing the forum selection clause is 28 U.S.C. § 1404(a). Accordingly, to the extent that the Defendant requests that the

---

[10] *Id.* at n.3 (emphasis in original).

[11] *See, e.g.*, Exprezit Convenience Stores, LLC v. Transaction Tracking Tech., Inc., No. 3:05CV12/MCR, 2005 WL 2704891, at *3 (N.D. Fla. Oct. 19, 2005)(Rogers, J.); Digital Envoy, Inc. v. Google, Inc., 319 F. Supp. 2d 1377, 1378-79 (N.D. Ga. 2004)("In cases since *Lipcon*, courts in the Eleventh Circuit have generally assumed that its rule applies only where transfer is impossible because the forum selection clause requires litigation in a foreign country."); Vickers v. Wells, No. Civ.A.. 105CV0930RWS, 2006 WL 89858, at *2 n.1 (N.D. Ga. January 11, 2006); D/H Oil and Gas Co. v. Commerce and Industry Ins. Co., No. 3:04-cv-448-Rv/MD, 2005 WL 1153332 at *3 (N.D. Fla. May 9, 2005)(Vinson, J.).

[12] Neither Performance Paint Yacht Refinishing, Inc. v. Haines, 190 F.R.D. 699, 700 (S.D. Fla. 1999) nor XR Co. v. Block & Balestri, P.C., 44 F. Supp.2d 1296, 1298 (S.D. Fla. 1999), cited by Defendant, is instructive and neither case supports the view that the Court should simply consider whether the forum selection clause is enforceable and ignore the factors utilized in a § 1404(a) analysis. Haines involved a forum selection clause designating a state court in Georgia as the appropriate venue. As such the court there could not order the transfer of the action to a state court but only had the available option of dismissing the case without prejudice. In XR Co. the Defendant did not seek dismissal of the action under Rule 12(b)(3) but rather transfer to another federal forum. The Court analyzed the defendant's request to enforce the forum selection clause utilizing the factors under § 1404(a).

Court dismiss the action for improper venue under Rule 12(b)(3) the request is due to be denied.

Where a party requests a federal court sitting in diversity to transfer a case to another federal forum "federal law, specifically 28 U.S.C. § 1404(a), governs the District Court's decision whether to give effect to the parties' forum-selection clause and transfer this case to [another] court . . . ."[13] Pursuant to 28 U.S.C. § 1404(a) a district court must "balance a number of case-specific factors" to determine whether to grant a motion to transfer.[14] While a forum selection clause is a "significant" factor,[15] the district court "also must weigh . . . the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.' "[16] "The forum selection clause . . . should receive neither dispositive consideration nor no consideration. . . ."[17] In a motion to transfer, the burden falls on the movant to establish that the suggested forum is more convenient. However, where the parties have entered into a valid and exclusive forum selection clause, the burden shifts to the nonmovant party to "persuad[e] the court that the contractual forum is sufficiently inconvenient to justify retention of the dispute."[18] "The venue *mandated* by a choice of forum clause rarely will be outweighed by other

---

[13] Stewart Org., Inc. v Ricoh Corp., 487 U.S. 22, 32 (1988).

[14] *Id.* at 29.

[15] *Id.*

[16] *Id.* at 30.

[17] *Id.* at 31.

[18] *Id.*

1404(a) factors."[19] However, courts have refused to dismiss a suit or transfer an action to the stated forum when the forum selection clause is deemed merely permissive, rather than mandatory.[20] Therefore, as a first step the Court must determine whether the forum selection clause in this case is mandatory or permissive.

A permissive forum selection clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere.[21]  In contrast, a mandatory clause must be clear, unequivocal and contain language of exclusivity.[22]  In the instant case, the forum selection clause in the Agreement provides that:

> Purchaser and Seller mutually agree that any legal cause of action arising out of a dispute concerning this Agreement or the enforceability of any part thereof shall be subject to the jurisdiction of the United States District Court in and for the Eastern District of Pennsylvania.

Rather than asserting that the forum selection clause is mandatory the Defendant contends that the forum selection clause is valid and enforceable. The closest Defendant comes to arguing that the forum selection clause is mandatory is Defendant's statement that the Eastern District of Pennsylvania is the exclusive venue for resolution of disputes under the Agreement. While conceding that the forum selection clause is both valid and enforceable Plaintiff argues that the key inquiry is not whether the clause is valid and enforceable but rather whether the forum selection clause is  mandatory or permissive. Plaintiff contends that the forum selection clause is

---

[19] *Id.* at 33 (emphasis added).

[20] *See,* Snapper, Inc. v. Redan, 171 F.3d 1249, 1262 n.24 (11th Cir. 1999).

[21]  *Id.*

[22] *Id.*

permissive and not mandatory because it does not prohibit Plaintiff from filing suit in a jurisdiction other than the Eastern District of Pennsylvania and merely provides that if suit is filed in the Eastern District of Pennsylvania the court there will have jurisdiction.

The Court does not need to interpret the forum selection clause in this case in a vacuum because a number of other courts have analyzed very similar forum selection clauses and have concluded that forum selection clauses, as here, which do not limit venue to a particular forum but rather merely contain language designating a court or courts where jurisdiction may be established are permissive.[23] Accordingly, the Court concludes in accordance with the weight of authority in cases involving very similar language that the forum selection clause in this case is permissive and not mandatory.

In addition, as underscored by Plaintiff, the Defendant previously has filed suit against the Plaintiff in the Lake County Superior Court of the State of Indiana[24] and the District Court of Johnson County, Kansas[25] for breach of the same Agreement at issue

---

[23] *See, e.g.* Stateline Power Corp. v. Kremer, 148 Fed. Appx. 770, 771 (11th Cir. 2005) (finding permissive clause which stated "this Agreement and the rights and obligations hereunder shall be governed by the laws of the State of Florida and the parties to this Agreement specifically consent to the jurisdiction of the courts of the State of Florida over any action arising out of or relating to this Agreement"); Citro Florida, Inc. v. Citrovale, 760 F.2d 1231, 1231-32 (11th Cir. 1985) (finding clause permissive which stated, "place of jurisdiction is Sao Paulo/Brazil" because it did not clearly specify that Sao Paolo was the only place of jurisdiction); Keaty v. Freeport Indonesia, Inc., 503 F.2d 955, 957 (5th Cir. 1974) (finding permissive clause which stated "this agreement shall be construed and enforceable according to the law of the State of New York and the parties submit to the jurisdiction of the courts of New York"); Wai v. Rainbow Holdings, 315 F. Supp. 2d 1261, 1270-73 (S.D. Fla. 2004) (finding clause which read that the "parties hereby agree to submit [to] the jurisdiction of the courts of Singapore," was permissive); AmerMedCorp. v. Disetronic Holding AG, 6 F. Supp. 2d 1371, 1374-75 (N.D. Ga. 1998) (finding permissive clause which stated that "the courts of the canton of Berne, Switzerland, shall have jurisdiction for all disputes arising out between the parties and waive any claim to the contrary"); King v. PA Consulting Group, Inc., 78 Fed. Appx. 645, 647-49 (10th Cir. 2003) (finding permissive clause which stated "This agreement and all matters arising in connection with it shall be governed by the law of the State of New Jersey and shall be subject to the jurisdiction of the New Jersey Courts.").

[24] *See,* Doc. 13, Ex. B.

[25] *See*, Doc. 13, Ex. C.

in this case. This fact cuts against Defendant's suggestion that the forum selection clause in the Agreement is exclusive and requires the parties to file all lawsuits only in the District Court for the Eastern District of Pennsylvania.

Having concluded that the forum selection clause is permissive and not mandatory the Court's analysis does not end there. Where a permissive forum selection clause is present the Court must consider the forum selection clause as only one of several factors in its analysis. Thus, the burden falls on the moving party (here, the Defendant) to establish that the requested forum is more convenient than Plaintiff's initial choice of forum.

"The decision to transfer a case to another district is left to the sound discretion of the trial court"[26] and should be determined based on the facts of a particular case.[27] The court must complete a two-prong analysis. First, the Court must consider whether the case originally could have been brought in the requested transfer district.[28] Secondly, the Court must weigh the convenience factors to determine which forum is more appropriate.

There is no dispute that the first prong can be established. The forum selection clause expressly provides that the Eastern District of Pennsylvania shall have jurisdiction to determine disputes between the parties relating to the Agreement. As such, suit could have been brought in the Eastern District of Pennsylvania.

---

[26] Brown v. Conn. Gen. Life Ins. Co., 934 F.2d 1193, 1197 (11th Cir. 1991).

[27] See Eye Care Int'l Inc. v. Underhill, 119 F. Supp. 2d 1313, 1317 (M.D. Fla. 2000).

[28] *Id.* at 1318.

With regard to the second prong - the convenience factors - Defendant chose to rest solely on its argument that the forum selection clause is mandatory. And despite the fact that the burden is upon the Defendant to establish that convenience weighs in favor of transfer, it has not presented any argument or facts to suggest that the balance of convenience of the parties, the witnesses and the interests of the public weigh in favor of transfer to the Eastern District of Pennsylvania. Plaintiff argues, however, that the three factors the court must consider -- the convenience of the parties, the convenience of the witnesses, and the interests of justice -- all weigh against transferring this action to the Eastern District of Pennsylvania.

A court is required to defer to the plaintiff's choice of forum unless the convenience factors clearly outweigh plaintiff's choice.[29] With respect to the convenience of the parties and the witnesses, Plaintiff's primary place of business is in Ocala, Florida. It maintains its books and records, including documents relating to the Agreement in Ocala, Florida. Plaintiff's Chairman and primary negotiator of the Agreement, Lee Farkas, resides in Ocala, Florida and signed the Agreement on behalf of Plaintiff in Ocala. Most, if not all, of the work Plaintiff performed in fulfilling its obligations under the Agreement was performed by Plaintiff's employees who work and reside in or near Ocala, Florida. Plaintiff also asserts that the damage it suffered was experienced predominantly in Ocala, Florida.[30]

---

[29] *See,* Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 260 (11th Cir. 1996) (quoting Howell v. Tanner, 650 F.2d 610, 616 (5th Cir. 1981)).

[30] *See,* Doc. 13 at 10-11.

Defendant is a Pennsylvania corporation with its principal place of business in Pennsylvania. Presumably, Defendant maintains its records in Pennsylvania and the majority of its witnesses are located there. There can be little doubt that it would be more convenient for Defendant to litigate this case in Pennsylvania. However, in determining whether to grant a transfer under § 1404(a) whether it would be more convenient for one party to litigate in its home forum is not the test. Rather, the Defendant must establish that litigating this case in the Middle District of Florida would be unduly burdensome to it. "Where a transfer merely shifts the inconvenience from one party to another, Plaintiff's choice of forum should remain."[31] Defendant is licensed to conduct business in Florida and has not challenged that it is subject to personal jurisdiction in the Middle District of Florida.

Therefore, for these reasons, the Court concludes that on balance the convenience to the parties is at best in equipose and therefore there is no reason to disturb Plaintiff's choice of forum.[32] Accordingly, Defendant's Motion to Transfer Venue is due to be **DENIED**.

**B. Defendant's Motion To Dismiss Under Rule 12(b)(6)**

In determining the propriety of granting a motion to dismiss, a court must accept all the factual allegations in the complaint as true and evaluate the inferences derived from the facts in the light most favorable to the plaintiff.[33] In passing on a motion to dismiss under Rule 12(b)(6), the Court is mindful that "[dismissal of a claim on the basis

---

[31] Eye Care, 119 F. Supp. at 1319.

[32] Eye Care, 119 F. Supp. 2d at 1319-20.

[33] *See e.g.*, Bryant v. Aviate Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

of barebones pleadings is a precarious disposition with a high mortality rate."[34] A complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[35] The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low.[36]

While the Court is required to utilize the notice pleading standards of Rule 8(a) when analyzing the sufficiency of a complaint, the Court, nonetheless, is required to utilize applicable state substantive law in determining the elements of common law claims where the Court's jurisdiction, as here, is based upon diversity of citizenship.[37]

**1. *Promissory Estoppel***

Plaintiff's Complaint includes claims for breach of contract and promissory estoppel. Defendant argues that it is inconsistent to assert a claim for breach of an

---

[34] Int'l Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv., 400 F.2d 465, 471 (5th Cir. 1968).

[35] Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Cook & Nichol, Inc. v. The Plimsoll Club, 451 F.2d 505, 506 (5th Cir. 1971) ("[A] motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would not be entitled to recover under any state of facts which could be proved in support of his claim.").

[36] *See,* Ancata v. Prison Health Servs., 769 F.2d 700, 703 (11th Cir. 1985) (citation omitted).

[37] The parties have cited both Florida and Pennsylvania law in their respective briefs with regard to their analysis of Plaintiff's claims for promissory estoppel, unjust enrichment, and conversion. Ordinarily the Court would have to determine which state law applied to a claim. In determining which law governs, the Court is required to apply the choice of law rules of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). With respect to the contract claims, Florida choice of law rules follows *lex loci contractus*, which provides that the law of the place where the contract was signed, governs the dispute. Fioretti v. Mass. Gen. Life Ins. Co., 53 F.3d 1228, 1235 (11th Cir. 1995). The *lex loci contractus* approach also applies to claims for unjust enrichment. *See,* Trumpet Vine Invs., N.V. v. Union Capital Partners, 92 F.3d 1110, 1119-1120 (11th Cir. 1996). However, Florida courts have also held that where the parties specified a choice of law by contract, the will of the parties will govern unless the parties' choice violates the public policy of the forum state. Gilled v. United Servs. Auto. Ass'n, 300 So.2d 3, 6-7 (Fla. 1974).With respect to tort claims, under Florida choice of law rules, the law of the place with the most significant relationship to the controversy governs. Bishop v. Florida Specialty Paint Co., 389 So.2d 999 (Fla. 1980). The Agreement contains a choice of law provision applying Pennsylvania law to any dispute. See Doc. 13 at 12 n.5. However, neither party argues that the law of Pennsylvania conflicts with, or contravenes on public policy grounds, the law of Florida. And with respect to the elements of Plaintiff's claims, Florida and Pennsylvania law are virtually identical. Accordingly, the Court will not at this juncture engage in a formal choice of law analysis because the application of the law of either state would lead to the same result.

enforceable agreement and at the same time recast the same facts to support a claim for promissory estoppel. While recognizing that there may a theoretical inconsistency between such claims, Plaintiff contends that at this stage of the proceedings, pursuant to Fed. R. Civ. P. 8(e)(2), it should be allowed to plead alternative theories of its case.[38]

Promissory estoppel is a legal theory utilized to enforce the promise of another party that is unsupported by consideration. A court can enforce the promise where (1) the promisor makes a promise that the promisor reasonably expects will induce action or forebearance by the promisee, (2) the promisee takes such action as induced by the promise, and (3) justice can only be avoided by enforcing the promise. Notably, promissory estoppel only applies where there is no binding contract between the parties. [39]

While Plaintiff has included all of the elements of a claim for promissory estoppel the identical allegations are relied upon to support Plaintiff's claim for breach of the Agreement. The essence of both claims is that Defendant promised to pay to Plaintiff the sums presently retained by Defendant under the Agreement. Where, as here, an

---

[38] Pursuant to Fed. R. Civ. P. 8(a) and (e)(2), a party may plead in the alternative or "may set forth two or more statements of a claim . . . alternately or hypothetically, either in one count . . . or in separate counts . . . ." Fed. R. Civ. P. 8(e)(2).

[39] See Carlson v. Arnot-Ogden Mem'l Hosp., 918 F.2d 411, 416 (3rd Cir. 1990) (citing Cardmone v. Univ. of Pittsburgh, 384 A.2d 1228, 1233 n.9 (Pa. Super. Ct. 1978)). Florida law provides for the same elements in a cause of action for promissory estoppel. See Mobil Oil Corp. v. Dade County Esoil Mgmt. Co., 982 F. Supp. 873, 880 n.3 (S.D. Fla. 1997) (citing W.R. Grace & Co. V. Geodata Servs., Inc., 547 So.2d 919,924 (Fla. 1989)).

express contract exists a claim for promissory estoppel fails because the express contract gives the Plaintiff an adequate remedy at law for breach of contract.[40]

In the instant case, the parties do not dispute that they entered into the Agreement. Indeed, Plaintiff affirmatively states in the Complaint "this case involves an attempt by one company, GMACM, to refuse to pay approximately $8,386,000.00 to Taylor Bean, even though GMACM is obligated to do so under an *agreement* between the parties."[41] Further, Plaintiff states that its claims are premised upon a breach by Defendant of paragraphs 2.4(b)(3) and (4) of the Agreement.[42] The approximate $8.3 million of damages Plaintiff seeks in its promissory estoppel count are the same damages requested in its breach of contract claim. These monies are the same monies that Plaintiff alleges Defendant withheld from the purchase price in violation of the terms of the Agreement.[43]

---

[40] Mobil Oil, 982 F. Supp. at 880; *see also* Synesious v. Designtomarket, Inc., No. 01-5358, 2002 WL 501494, at *4-5 (E.D. Pa. April 3, 2002).

[41] Compl. ¶ 1 (emphasis added).

[42] Paragraph 2.4(b)(3) of the Agreement provides that

> [t]he balance of the Purchase Price shall be payable upon the later of (i) one hundred twenty (120) days after the Transfer Date, (ii) the date of Purchaser's receipt of the initial shipment of Mortgage Loan Files, (iii) receipt of all remaining Complete Mortgage Loan Files, and (iv) verification of the Purchase Price calculation.

Paragraph 2.4(b)(4) provides in relevant part that

> [i]n the event Purchaser has not received all remaining Complete Mortgage Loan Files . . . within one hundred twenty (120) days after the Transfer date, the remaining balance of the Purchase Price shall be released monthly to Seller commencing five (5) months following the Transfer Date on a pro-rata basis, based on the Complete Mortgage Loan Files received by Purchaser during the previous month . . . "

[43] See Synesiou, 2002 WL 501494, at *5 ("Given that Synesiou seeks to recover the same damages under his promissory estoppel and unjust enrichment claims as his breach of contract claim . . .it is evident that Synesiou's promissory estoppel and unjust enrichment claims concern matters within the
(continued...)

Plaintiff has not suggested in its Complaint that the Agreement is invalid or enforceable for any reason. And Plaintiff affirmatively relies upon relevant provisions of the Agreement in its Complaint.[44] Notwithstanding Plaintiff's affirmative reliance upon the Agreement to support its claim, Plaintiff suggests that "it is too early to know whether the terms of the Agreement govern all contested issues (or even what these issues will eventually be)."[45] While theoretically there may be a possibility that there could be issues in dispute not governed by the Agreement, or extra-contractual claims, Plaintiff has failed to suggest - or more importantly plead - the basis for such claims or the nature of the disputes not governed by the Agreement. The right to plead alternative claims under Rule 8 of the Federal Rules of Civil Procedure is different from the prohibition against inconsistent pleading. In the absence of any allegations in the Complaint of the basis for extra-contractual claims, Plaintiff's claim for recovery under promissory estoppel is entirely inconsistent with - and not alternative to - its claims for breach of contract. Accordingly, Defendant's Motion to Dismiss plaintiff's claim in Count II of the Complaint for promissory estoppel is due to be **GRANTED**.

**2. *Unjust Enrichment***

The same analysis applies to Plaintiff's claim for unjust enrichment in Count III of the Complaint. In Plaintiff's unjust enrichment count, Plaintiff alleges that Defendant wrongfully retained over $8.3 million to Plaintiff's detriment. Defendant challenges

---

[43](...continued)
four corners of the employment agreement. Thus, Synesiou's promissory estoppel and unjust enrichment claims are defeated by the existence of the employment agreement.")

[44] See Compl. ¶¶ 9-14.

[45] Doc. 13 at 14.

Plaintiff's right to bring a claim for the equitable remedy of unjust enrichment when an express contract exists between the parties.

To allege a cause of action for unjust enrichment the Plaintiff must show that "1) the plaintiff has conferred a benefit on the defendant, who has knowledge thereof; 2) the defendant voluntarily accepts and retains the benefit conferred; and 3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying for it."[46]

Plaintiff alleges that despite transferring certain loan servicing accounts and their relevant files to Defendant, Defendant has not paid the full purchase price, but instead retained the approximately $8.3 million at issue in this case, as well as the loan servicing accounts. Plaintiff contends that it is unjust and inequitable for Defendant to retain any of the money it owes Plaintiff for the purchase of these mortgage loan accounts. However, as is the case with promissory estoppel, with regard to a claim for unjust enrichment "upon a showing that an express contract exists, the quasi-contract claim fails."[47] As discussed above, Plaintiff has not suggested nor alleged that the Agreement is invalid or unenforceable. Instead, Plaintiff, is seeking to recover the same monies through both its breach of contract and unjust enrichment claims. Therefore, because there is an available remedy at law, the equitable remedy of unjust enrichment

---

[46] Shibata v. Lim, No. 6:99-cv-984-Orl-28C, 2000 U.S. Dist. LEXIS 20053, at *9 (M.D. Fla. November 15, 2000); see also Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc., 832 A.2d 501, 507 (Pa. Super. Ct. 2003) ("The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.").

[47] Thunderwave, Inc. v. Carnival Corp., 954 F. Supp. 1562, 1566 (S.D. Fla. 1997); see also Synesiou, 2002 WL 501494, at *4-5.

- as presently pled - fails because the "law will not imply a contract where a valid express contract exists."[48] Accordingly, Defendant's Motion to Dismiss Count III of Plaintiff's Complaint for unjust enrichment is also due to be **GRANTED**.

**3. *Conversion***

Lastly, Plaintiff includes in its Complaint a claim for conversion alleging that Defendant is liable for conversion by wrongfully retaining the remainder of the purchase price owed to Plaintiff. Defendant asserts two grounds in support of its request to dismiss the conversion count. First, Defendant contends that contrary to Pennsylvania's "gist of the action" doctrine, Plaintiff is inappropriately attempting to re-characterize its breach of contract claim as a tort claim. Second, Defendant argues that in the conversion count, Plaintiff's seeks only repayment of a debt, which does not involve a specific and particularly identified fund necessary to establish a claim of conversion.

Under Florida law, "[c]onversion is an unauthorized act which deprives another of his property permanently or for an indefinite time. . . . The essence of the tort is not the acquisition of the property; rather it is the wrongful deprivation."[49] Money can be considered converted property, but while it "need not be earmarked, [ ] there must be an obligation to keep intact or deliver the specific money in question, so that such money

---

[48] Thuderwave, 954 F. Supp. at 1566 (quoting Solutec Corp. v. Young & Lawrence Assocs., Inc., 243 So.2d 605, 606 (Fla. Dist. Ct. App. 1971)).

[49] Nat'l Union Fire Ins. Co. of Pa. v. Carib Aviation, Inc., 759 F.2d 873, 878 (11th Cir. 1985) (quoting Senfeld v. Bank of Nova Scotia Trust Co. (Cayman), 450 So.2d 1157, 1160-61 (Fla. Dist. Ct. App. 1984) (citing Star Fruit Co. v. Eagle Lake Growers, Inc., 33 So.2d 858 (Fla. 1948))); see also Peoples Mortgage Co. v. Fed. Nat'l Mortgage, 856 F. Supp. 910, 928 (E.D. Pa. 1994) (defining conversion under Pennsylvania law as "the deprivation of another's right of property in, or use or possession of, a chattel without the owner's consent and without lawful justification.").

can be identified."[50] A "specific fund" must be identified for an action for conversion to be sustained where it appears that the action is only for the payment of money that arises out of a contractual relationship.[51]

Although Fed. R. Civ. P. 8(a) permits pleading in the alternative, under the law in Florida, and pursuant to Pennsylvania's "gist of the action" doctrine, plaintiffs are precluded "from re-casting ordinary breach of contract claims into tort claims."[52] While a tort action may arise where there is a contract, the tort must be the "gist of the action" and the contract merely "collateral." As one Pennsylvania court explained,

> [t]ort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensual agreements between particular individuals. In tort actions, damages are awarded to compensate the plaintiff for all losses suffered by the breach of the duty, whereas in contract actions, damages are limited by the scope of the agreement and must be foreseeable at the time the agreement is made.[53]

In the instant case, Plaintiff's damages arise from the alleged failure to comply with the Agreement. Plaintiff seeks to recover $8.3 million which Plaintiff claims Defendant still owes it under the Agreement as part of the purchase price for the sale of

---

[50] Belford Trucking Co. v. Zagar, 243 So.2d 646, 648 (Fla. Dist. Ct. App. 1971); see also Peoples, 856 F. Supp. at 928 ("The party claiming conversion must have had an immediate right to possession of the property at the time it was allegedly converted. Money may be the subject of a conversion.") (internal citations omitted); Sterrett v. Royal Indemnity Co., 26 Pa. D. & C. 254, 258 (1936).

[51] Bel-Bel Int'l Corp. v. Cmty. Bank of Homestead, 162 F.3d 1101, 1109 (11th Cir. 1998) ("The specific fund requirement is an exception to the general rule that an obligation to pay money cannot be enforced through an action for conversion.")

[52] Kee v. Nat'l Reserve Life Ins. Co., 918 F.2d 1538, 1541 (11th Cir. 1990) ("Neither an obligation to pay money nor a breach of contract generally gives rise to a claim of conversion in tort."); Etoll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 14 (Pa. Super. Ct. 2002).

[53] Iron Mountain Sec. Storage Corp. v. Am. Specialty Foods, Inc., 457 F. Supp. 1158, 1165 (E.D. Pa. 1978).

the loan servicing accounts.[54] Consequently, the Agreement is not merely collateral to the dispute, but rather is central to the ordering of affairs between these parties. Any breach of the Agreement thus gives rise to an action in contract, and not in tort.[55]

Further, it is well settled that a conversion claim does not lie where Plaintiff asserts that Defendant is obligated to pay it money owed to it under an agreement[56] and certainly not where there is no specific identifiable fund that is the focus of the claim. Plaintiff has not alleged that a specific fund exists out of which it should be paid the monies that it contends it is owed. Rather, Plaintiff only seeks the repayment of $8.3 million - a fungible debt - it claims Defendant is obligated to pay under the Agreement. Accordingly, in the absence of any allegation that there is "a specific fund capable of separate identification," the claim for conversion must fail[57] and, thus, Defendant's Motion to Dismiss Count IV of Plaintiff's Complaint for conversion is also due to be **GRANTED.**

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. 10) for improper venue and motion to transfer venue are **DENIED** and Defendant's Motion to Dismiss is

---

[54] See Compl. at 2-4 (quoting language from the Agreement and explaining the obligations and relationship of the parties under the contract).

[55] See Peoples, 856 F. Supp. at 928 (dismissing conversion claim in dispute over a valid loan servicing agreement because the agreement was more appropriately enforced through a breach of contract action).

[56] See Kee, 918 F.2d at 1541; see also Petroleum Mktg. v. Metro. Petroleum Corp., 151 A.2d 616 (Pa. 1959); Bernhardt v. Needleman, 705 A.2d 875, 878 (Pa. Super. Ct. 1998)("[F]ailure to pay a debt is not conversion.").

[57] Bel-Bel Int'l Corp. v. Cmty. Bank of Homestead, 162 F.3d 1101, 1108 (11th Cir. 1998).

**GRANTED** with respect to Counts II (promissory estoppel), III (unjust enrichment), and IV (conversion) of the Complaint. [58]

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on June 15, 2006.

GARY R. JONES
United States Magistrate Judge

Copies to:
All Counsel

[58] The dismissal of count II for promissory estoppel and count III for unjust enrichment is without prejudice to Plaintiff's right to renew these claims should it turn out that the Agreement is invalid or unenforceable or in the event Plaintiff is able to allege facts supporting claims against Defendant that are independent to and extra-contractual from the claim for breach of the Agreement.