UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

TAYLOR, BEAN & WHITAKER MORTGAGE
CORPORATION, a Florida corporation,

               Plaintiff,

v.                                                 Case No.  5:05-cv-260-Oc-GRJ

GMAC MORTGAGE CORPORATION, a
Pennsylvania corporation,

               Defendant.
_____

## ORDER

Pending before the Court is GMAC Mortgage Corporation's Motion To Dismiss Taylor, Bean & Whitaker Mortgage Corporation's Counterclaims And Incorporated Memorandum In Support. (Doc. 65.) Plaintiff Taylor, Bean & Whitaker Mortgage Corporation ("TBW") has filed a response in opposition. (Doc. 73.) With the Court's permission, Defendant GMAC Mortgage Corporation ("GMAC") filed a Reply to TBW's Response (Doc. 82) and, accordingly, the matter is ripe for review. For the reasons discussed below, GMAC's Motion to Dismiss is due to be **DENIED**.

## I.  BACKGROUND AND FACTS

This case concerns two Purchase and Sale Agreements entered into between GMAC and TBW in 2000 and 2002 ("the Agreements").[1] Pursuant to the Agreements, GMAC purchased from TBW all rights, title, and interest in and to the servicing of

---

[1] Doc. 38, Taylor, Bean & Whitaker Mortgage Corporation's First Amended Counterclaims, ¶¶ 6-7.

certain mortgage loans.[2] The Counterclaims by TBW deal with two different groups of the mortgage loans transferred to GMAC.

The first group of mortgage loans includes loans repurchased from GMAC by TBW under the Agreements based upon the assertion by GMAC that the loans were defective. According to TBW, although these defective loans did not meet the criteria for repurchase or payment under the Agreements[3] GMAC requested payment and TBW paid to repurchase a number of these loans.

The second group of mortgage loans that is involved in TBW's counterclaims concerns a guaranty agreement that was executed as part of the 2002 Agreement in which GMAC Residential Funding Corporation ("RFC"), an affiliate of GMAC, entered into a Guaranty Agreement (the "RFC Guaranty") with GMAC. Pursuant to the RFC Guaranty, RFC guaranteed to GMAC the repayment of the purchase price of any 2002 Agreement loans that GMAC had to repurchase from the investor. According to TBW, over its objection, RFC paid GMAC the amounts demanded by GMAC for repurchased loans. After paying GMAC under the RFC Guaranty, RFC sought payment for these sums from TBW.

There are two remaining counts in TBW's Amended Counterclaims.[4] In Count I of the Counterclaim, TBW brings a claim for breach of the 2000 and 2002 Agreements

---

[2] *Id.* at ¶ 8.

[3] Section 10.2 of the Agreements sets forth the procedures under which GMAC could request that TBW repurchase a loan that was "defective." The procedures require that GMAC provide TBW with proper notice regarding the repurchase requests and provide an opportunity for TBW to cure the asserted defect in the loan.

[4] The non-contractual counts originally included in TBW's Amended Counterclaims were dismissed without prejudice based upon a stipulation between the parties. (*See,* Docs. 59 and 62.)

alleging that GMAC's requests for repurchase of certain mortgage loans breached the
Agreements because GMAC misrepresented to TBW that these loans were qualified for
repurchase or payment under the criteria in the Agreements. These loans include those
where TBW paid the purchase price to repurchase these loans as well as those loans
where the repurchase price was paid by RFC to GMAC under the RFC Guaranty.

In Count IV of the Amended Counterclaims - the other remaining count - TBW
brings another claim for breach of contract alleging that it was the intended beneficiary
of the RFC Guaranty and that GMAC breached the RFC Guaranty by requesting
payment from RFC and receiving payment for the repurchase of certain mortgage
loans. GMAC contends that both remaining counts of TBW's Amended Counterclaims
are barred under the voluntary payment doctrine.

## II.  STANDARD OF REVIEW

In determining the propriety of granting a motion to dismiss, a court must accept
all the factual allegations in the complaint as true and evaluate the inferences derived
from the facts in the light most favorable to the plaintiff.[5] In passing on a motion to
dismiss under Rule 12(b)(6), the Court is mindful that "[d]ismissal of a claim on the basis
of barebones pleadings is a precarious disposition with a high mortality rate."[6] A
complaint should not be dismissed for failure to state a claim unless it appears "beyond
doubt that the plaintiff can prove no set of facts in support of his claim which would

---

[5] *See e.g.*, Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

[6] Int'l Erectors, Inc. v. Wilhoit Steel Erectors Rental Serv., 400 F.2d 465, 471 (5th Cir. 1968).

entitle him to relief."[7] The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low.[8]

## III.  DISCUSSION

As a threshold matter the Court must address which law governs because the parties have relied upon the law of both Florida and Pennsylvania concerning the interpretation of the voluntary payment doctrine. As explained below, the choice of law analysis is complicated because the Court must determine first whether the laws of Florida and Pennsylvania are in conflict before engaging in the appropriate choice of law analysis.

With this in mind, the Court will turn to the starting point in the choice of law analysis, which begins with application of the choice of law rules of the state in which the Court sits.[9]  Under Florida choice of law rules applicable to claims for breach of contract, Florida follows the principle of *lex loci contractus*, which means that the law of the place where the contract was signed governs the dispute.[10] However, Florida recognizes an exception to this general rule where the parties have specified a choice of law in their contract. Where the parties have designated a choice of law in their

---

[7] Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02 (1957).  *See also* Cook & Nichol, Inc. v. The Plimsoll Club, 451 F.2d 505, 506 (5th Cir. 1971)("a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would not be entitled to recover under any state of facts which could be proved in support of his claim").

[8] *See*, Ancata v. Prison Health Servs., 769 F.2d 700, 703 (11th Cir. 1985) (citation omitted).

[9] Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).

[10] Fioretti v. Mass. Gen. Life Ins. Co., 53 F.3d 1228, 1235 (11th Cir. 1995).

contract the will of the parties will govern unless the parties' choice violates the public policy of the forum state.[11]

The Agreements in this case contain a choice of law provision, which provides that the "Agreement shall be governed by the laws of the Commonwealth of Pennsylvania applicable to agreements made and to be performed entirely within such state."[12] Therefore, assuming this provision of the Agreement controls application of the voluntary payment doctrine, Pennsylvania law would apply unless application of Pennsylvania law would violate the public policy of Florida. Further, assuming that application of the voluntary payment doctrine would violate the public policy of Florida the Court would then be required to apply the law of the place where the contract was signed. Unfortunately, however, the Amended Counterclaims do not allege the place of contract formation nor have the parties suggested in their briefs the state where the contract was signed. This shortcoming only becomes a problem if the Court determines that the choice of law clause is inapplicable because application of Pennsylvania would violate the public policy of Florida.

To determine whether application of the Pennsylvania choice of law clause would violate the public policy of Florida the Court must address the law of Florida and Pennsylvania with regard to the voluntary payment doctrine.

As a general principle of law both Florida and Pennsylvania recognize the voluntary payment doctrine.  In Florida, as long ago as before the turn of the twentieth

---

[11] Gillen v. United Servs. Auto. Ass'n, 300 So.2d 3, 6-7 (Fla. 1974).

[12] See Doc. 13 at 12 n.5.

5

century, the Florida Supreme Court recognized that money voluntarily paid upon claim of right with full knowledge of all of the facts, cannot be recovered back merely because the party, at the time of payment, was ignorant, or mistook the law, as to his liability.[13] Likewise, the Pennsylvania Supreme Court recognized that "[t]here is no principle of law better settled than that money voluntarily paid with a knowledge of the facts cannot be recovered back."[14] Stated another way, under Pennsylvania law "[I]t is elementary that one who voluntarily pays money with full knowledge of the facts, without any fraud having been practiced upon him, cannot recover it back."[15] Therefore, as a general statement of the law the voluntary payment doctrine may be raised as a bar to a claim for money paid voluntarily whether Florida or Pennsylvania law was applied, thus, arguably creating a false conflict.[16]

The analysis does not end there, however, because under Florida law the common law doctrine of voluntary payment has been limited by statute. Under section 725.04 of Chapter 725 of the Florida Statutes entitled "Unenforceable Contracts," the Florida legislature has prohibited the application of the voluntary payment doctrine in contract actions to "recover a payment made pursuant to the contract and by the terms

---

[13] Jefferson County v. Hawkins, 2 So. 362, 365 (Fla. 1887); *see also,* Hall v. Humana Hospital Daytona Beach, 686 So.2d 653, 657 (Fla. Dist. Ct. App. 1997)("[E]very man is supposed to know the law, and if he voluntarily makes a payment which the law would not compel him to make, he cannot afterwards assign his ignorance of the law as a reason why the state should furnish him with legal remedies to recover it.")(*citing* North Miami v. Seaway Corp., 9 So.2d 705, 707 (Fla. 1942).

[14] De La Cuesta v. Insurance Co.of N.A., 136 Pa. 62, 78 (Pa. 1890).

[15] Coregis Insurance Co, v. Law Offices of Carole F. Kafrissen, 140 F.Supp.2d 461, 463 (E.D. Pa. 2001)(*citing* Ochiuto v. Prudential Ins. Co., 52 A.2d 228, 230 (Pa. 1947)).

[16] A "false conflict" is the principle that "[w]hen the laws of the competing states are substantially similar, the court should avoid the conflicts question and simply decide the issue under the law of each of the interested states. Fioretti v. Massachusetts General Life Ins. Co., 53 F.3d 1228, 1234 (11th Cir. 1995).

of the contract there was no enforceable obligation to make the payment or the making of the payment was excused."

The parties offer conflicting interpretations of what this statute means. Relying upon *Hall v. Humana Hospital Daytona,*[17] GMAC argues that §725.04 is not applicable to TBW's claims because section 725.04 "speaks only to those situations in which the contract on its face does not call for payment ..." GMAC reasons that based upon the fact that TBW alleges "the Agreements on their face did not obligate Taylor Bean to repurchase or provide money to GMAC for the loans at issue .." the contract clai*m*s in TBW's Counterclaims are outside of the narrow exception to the voluntary payment doctrine contemplated under §725.04.

TBW relies upon *Sensormatic Security Corporation v. Sensormatic Electronics Corp.,*[18] to interpret §725.04 as prohibiting the use of the voluntary payment doctrine in actions for recovery of payments made under a contract where the payments were made under an unenforceable provision of the contract.

A close examination of *Hall*, *Sensormatic* and the context in which the statute was enacted disclose that §725.04 is applicable to TBW's counterclaims in this case. Section 725.04 was enacted to narrow or limit the voluntary payment doctrine - which had existed since the 1880's - in contract actions. The simple meaning of § 725.04 is that the voluntary payment doctrine cannot be used as a defense to payment in Florida where, as here, a party seeks to recover monies paid under a contract, the terms of

---

[17]  686 So. 2d 653, 658 (Fla. Dist. Ct. App. 1996)

[18] 249 F.Supp.2d 703, 706-07 (D. Md. 2003)(applying Florida law)

which turn out to be unenforceable. Claims for monies paid outside the terms and scope of the contract continue to be subject to the voluntary payment doctrine. Any other interpretation would make §725.04 meaningless and there would have been no reason for the codification of this limitation of the voluntary payment doctrine. This interpretation is also consistent with the application of the voluntary payment doctrine in both *Hall* and *Sensormatic*.

In *Hall* the Court found that §725.04 did not prohibit the application of the voluntary payment doctrine based upon an equitable claim for money had and received and not, as here, where the cause of action is based upon breach of a contract. The plaintiffs in *Hall*, who were former patients of the hospital, sued under equitable theories to recover overcharges for drugs, supplies and services, they had paid on their hospital bills. In affirming the entry of summary judgment in favor of the hospital Florida's intermediate appellate court correctly held that the claims were barred by the voluntary payment doctrine, noting that §725.04 was not applicable because the "statute speaks only to those situations in which the contract on its face does not call for payment." There the contract signed by the patients clearly called for payment of the charges and thus the *Hall* court observed that (those obligations) were "plainly not unenforceable by the terms of the contract, as required by the statute." Stated another way - and recasting the double negative "not unenforceable by the terms of the contract" - because the payments in *Hall* were enforceable and "not unenforceable" the claims were outside of the scope of the statute.

Likewise in *Sensormatic* the Court there found that §725.04 applies where a party to a contract sues to recover a payment made pursuant to an unenforceable

obligation under the contract. There the plaintiff sued to recover improperly paid commissions under a contract. While the contract provided for the payment of commissions, the plaintiff alleged that the commissions paid did not meet the criteria under the contract for payment of the commissions. The *Sensormatic* court held that §725.04 applied, thus, barring the defendant from interposing the voluntary payment doctrine as a defense, because under the terms of the contract, payment of the commissions was not an enforceable obligation due to the fact that the equipment sold did not satisfy the criteria under the contract to trigger payment of commissions.

Thus, the proper interpretation of §725.04 that is consistent with both *Hall* and *Sensormatic* is that the statute eliminates the voluntary payment doctrine as a defense in actions to recover payments made under a contract where the obligation to make the payment under the contract is unenforceable.[19]

In the instant case the gist of TBW's claims for recovery of the monies paid to GMAC, as alleged in Count I of the counterclaim, is that the obligation to make the payments was not enforceable under the Agreements because the repurchased loans did not meet the requirements under the Agreements for repurchase. As such - under Florida law - the voluntary payment doctrine could not be interposed as a defense to the claims in Count I of TBW's counterclaims for breach of contract.

---

[19] *See also,* Saglio v. Chrysler First Commercial Corp., 839 F.Supp. 830, 834-35 (M.D. Fla. 1993)(applying §725.04 to preclude use of defense of voluntary payment in claim to recover monies paid under a contract).

9

Because Florida law abrogates the use of the voluntary payment doctrine in contract actions as here - and Pennsylvania law does not - this case presents a true conflict of law issue that must be resolved by the Court and not merely a false conflict.

As discussed previously, Florida enforces choice of law provisions unless the law of the chosen forum contravenes strong public policy.[20] TBW - the party seeking to avoid enforcement of the choice of law clause - must show that the foreign law contravenes the public policy of the forum jurisdiction.[21] While courts have considered a number of factors and have adopted varied formulations in determining whether contractual provisions violate public policy, the underlying principle remains the same. That is "[t]he countervailing public policy must be sufficiently important that it outweighs the policy protecting freedom of contract."[22] "The fact that the forum state law is different than the law of the foreign state does not mean that the foreign state's law necessarily is against the public policy of the forum state."[23]

TBW argues that "Section 725.04's explicit limitation on the parties' ability to contract and on their expectations as to the enforcement of the contract's terms ... demonstrate the importance of Florida's public policy to limit the scope of the voluntary payment doctrine ... " Further, TBW suggests that the "application of Section 725.04 here actually promotes the right of private parties to a contract and effectuates the

---

[20] Mazzoni Farms, Inc. V. E.I. DuPont De Nemours And Company, 761 So.2d 306, 311 (Fla. 2000).

[21] Id.

[22] Id.

[23] Id. at 312 (citing Punzi v. Shaker Adver. Agency, Inc., 601 So.2d 599 (Fla. Dist. Ct. App. 1992).

contractual intentions of the parties (rather than limiting them) by ensuring that Taylor

Bean can obtain the full benefits of its bargain with GMAC."

While these arguments have superficial appeal, they are not sufficient to

establish that enforcement of the choice of law clause would contravene a strong public

policy of Florida law. Indeed, one of the fundamental policies recognized in Florida is the

right to freedom of contract between parties.  As such, Florida courts have observed

that  "Courts ... should [proceed with] caution when called upon to declare transactions

as contrary to public policy and should refuse to strike down contracts ... on this ground,

unless it is made clearly to appear that there has been some great prejudice to the

dominant public interest sufficient to overthrow the fundamental policy of the right to

freedom of contract between parties *sui juris*."[24]  TBW and GMAC agreed to the

Pennsylvania choice of law clause in the Agreements and simply because the voluntary

payment doctrine under Florida law is more limited than the voluntary payment doctrine

as applied in Pennsylvania, is not on its own sufficient to prevent the application of the

Pennsylvania choice of law clause in the Agreements.

Accordingly, for these reasons, the Court concludes that Pennsylvania law

applies to the determination of whether the voluntary payment doctrine bars TBW's

claims under Count I of the Counterclaims for recovery of the payments made to

GMAC.[25]

---

[24] Pizza U.S.A. of Pampano Inc. V. R/S Assocs. Of Fla., 665 So.2d 237, 239 (Fla. Dist. Ct. App. 1995)(*quoting* Bituminous Casualty Corp. V. Williams, 17 So.2d 98, 101-02 (Fla. 1944)).

[25] A different choice of law analysis applies to the claims in Count IV of the Counterclaims because the claims, there, are based upon a breach of the RFC Guaranty. Neither party has alleged that the RFC Guaranty contains the same choice of law clause and therefore in the absence of a choice of law
(continued...)

Having determined that the Court must apply Pennsylvania law to the application

of the voluntary payment, the Court will now turn to whether the voluntary payment

doctrine supports GMAC's motion to dismiss the counterclaims. The Court concludes

that it does not for the following reasons.

The fundamental problem with GMAC's request to dismiss TBW's breach of

contract claims under the voluntary payment doctrine is that the voluntary payment

doctrine is an affirmative defense that normally should not be considered on a motion to

dismiss.[26] The reason why the voluntary payment doctrine is an affirmative defense is

that the voluntary payment doctrine applies - under Pennsylvania law - in situations

where the payment was made with full knowledge of all of the facts and without any

suggestion that the payor was defrauded in making the payment.[27]

It is well settled that in deciding a motion to dismiss under Rule 12(b)(6) the

Court cannot resolve the motion based upon affirmative defenses[28] because the Court

cannot resolve disputed factual issues based upon the four corners of the pleadings -

which under the Federal Rules of Civil Procedure are designed merely to provide notice

---

[25](...continued)
clause the Court is bound to apply the choice of law of the forum state in which it sits. As discussed
previously, Florida applies the law of the place where the contract was signed. Because there is no
allegation in the Counterclaim where the RFC Guaranty was signed the Court cannot, at this juncture,
determine whether the claim is subject to the limitation in Fla. Stat. §725.04. Moreover, as pled in Count
IV, there is no allegation that TBW is seeking to recover monies it paid to GMAC and, therefore, it is
doubtful that the voluntary payment doctrine would be available to GMAC as a defense to this count.

[26] Rothstein v. DaimleChrysler Corp., 2005 WL 3093573 (M.D. Fla. Nov. 18, 2005) (noting that
voluntary payment is an affirmative defense that is not properly considered on a motion to dismiss)

[27] Ochuito, 356 Pa. at 384.

[28] Butcher v. United Elec. Coal Co., 174 F.2d 1003, 1005-6 (7th Cir. 1949); Rothstein, 2005 WL
3093573 ; Mountjoy v. Twentieth Century-Fox Film Corp., 13 F.R.D. 122 (W.D. Mo.  1952).

12

of the claims and notice of defenses.[29] Where, however, the facts are completely disclosed on the face of the pleadings and the Court does not have to go outside the four corners of the complaint, the Court can address the applicability of an affirmative defense. [30]

In the instant case there is nothing on the face of TBW's counterclaims to suggest that TBW made the payments to repurchase the loans with full knowledge of all of the facts. To the contrary, TBW expressly alleges in its counterclaims that GMAC, as the servicer of the loans, misrepresented to TBW that certain mortgage loans were qualified for repurchase under Paragraph 10.2 - which according to TBW - caused TBW to pay more than $16 million to GMAC and to pay more than $3.5 million to RFC to repurchase those mortgage loans. Because TBW alleges that GMAC misrepresented that the "mortgage loans at issue did not satisfy the terms and conditions set forth in Paragraph 10.2" the Court must accept these allegations as true for purposes of resolving the motion to dismiss. Based upon the allegations in the counterclaims, the Court cannot ascertain whether or not TBW was fully aware of all of the facts surrounding GMAC's requests for payment. Therefore, because TBW alleges that it was not fully informed when it made the payments TBW's counterclaims are not subject to dismissal based upon the defense of the voluntary payment doctrine.

---

[29] William v. Nash, 428 So. 2d 96, 99-100 (Ala. 1983) (citing Wright & Miller).

[30] AVCO Corp. v. Precision Air Parts, Inc., 676 F.2d 494, 495 (11th Cir. 1982); White v. Padget, 475 F.2d 79, 82 (5th Cir. 1973);Suckow v. Borax Mines Consol. Inc. v. Borax Consol., Ltd., 185 F. 2d 196, 204-205 (9th Cir. 1950), cert. denied 340 U.S. 943; Larter & Sons, Inc. v. Dinkler Hotels Co., 199 F.2d 854, 855 (5th Cir. 1952) (a complaint may properly be dismissed under Rule 12(b)(6) when allegations in the complaint affirmatively show that the complaint is barred by applicable statute of limitations).

While GMAC ultimately may be able to establish that TBW voluntarily made the payments to GMAC with full knowledge of all of the facts and with knowledge of all of the information to ascertain whether the loans qualified for repurchase, this determination must be addressed after the parties have fully developed the evidence and cannot be made at this stage of the proceedings based upon the bare bones allegations in the counterclaims or based upon matters outside the four corners of the Amended Counterclaims.

Accordingly, for these reasons, the Court concludes that GMAC Mortgage Corporation's Motion to Dismiss Taylor, Bean & Whitaker Mortgage Corporation's Counterclaims is due to be denied.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on April 12, 2007.

GARY R. JONES
United States Magistrate Judge

Copies to:
All Counsel

14