UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

TAYLOR, BEAN & WHITAKER MORTGAGE
CORPORATION, a Florida corporation,

        Plaintiff,

v.                                Case No.  5:05-cv-260-Oc-GRJ

GMAC MORTGAGE CORPORATION, a
Pennsylvania corporation,

        Defendant.

_____

## ORDER

Pending before the Court is Taylor Bean's Motion To Strike GMAC's Second Amended Counterclaim Or, In the Alternative, To Dismiss Count V Of GMAC's Second Amended Counterclaim which the Court reviews as a motion to dismiss. (Doc. 110.) GMAC Mortgage Corporation has filed a response in opposition. (Doc. 113.) For the following reasons, Taylor, Bean and Whitaker Mortgage Corporation's Motion to Dismiss is due to be **DENIED**.

## I. BACKGROUND AND FACTS

GMAC Mortgage Corporation ("GMAC") filed a counterclaim against Taylor, Bean and Whitaker Mortgage Corporation ("TBW") (Doc. 28), which it later amended.  (Doc. 67.)   On April 19, 2007, the Court dismissed without prejudice Count V of GMAC's First Amended Counterclaim – the claim for fraudulent inducement – because GMAC failed to plead its fraud claim with the particularity as required by Rule 9(b), Fed.R.Civ.P.[1]

---

[1] *See* Doc. 100.

GMAC now has filed a Second Amended Counterclaim (Doc. 102) in which it has

realleged a claim for fraudulent inducement.

In its amended claim for fraudulent inducement, GMAC alleges that the

negotiations for the 2002 Agreement took place between March 2002 and the end of

May 2002 and included TBW's President, Lee Farkas, and GMAC's officer, Barry Bier

and "other officers of TBW and GMACM."[2]  GMAC alleges that during these

negotiations, TBW intentionally failed to disclose the many reasons behind Fannie

Mae's decision to terminate its contract with TBW because it knew that GMAC would

not have bid on the loan portfolio or entered into the agreement if it had been aware of

TBW's problems with servicing the loans or the numerous defects in the origination of

the loans.[3]  GMAC further alleges that TBW failed to disclose material facts pertaining to

its prior servicing relationship with Fannie Mae and to the loan portfolio purchased by

GMAC, including that (1) several seriously delinquent Fannie Mae owned loans were

held in the name of TBW's President, Lee Farkas, and other members of TBW's senior

management team and that the named borrowers did not hold title to the mortgaged

real estate and that the mortgages sold to Fannie Mae had never been recorded; (2)

non-investment quality loans were sold to Fannie Mae and, in particular, ten loans were

made to officers of TBW that were delinquent, and that at least one loan was made to

an individual who did not exist for a property that did not exist; (3) government loans

were missing the required insurance; (4) that TBW's management had an established

---

[2]  GMAC Mortgage Corporation's Second Amended Counterclaim Against Taylor, Bean & Whitaker Mortgage Corporation, Doc. 102, ¶ 52.

[3]  *Id.* at ¶53.

pattern of being slow to resolve repurchase issues and of wholly ignoring requests for information; (5) there was possible interference by TBW's management with the loan underwriting process; (6) twelve loans with an unpaid principal balance of $1 Million was sold in duplicate in January-February 2002; and (7) TBW's loan reporting was inconsistent.[4]  GMAC alleges that it was wholly unaware of these problems and had no means of obtaining such knowledge.  GMAC alleges that if it had been informed of this information, it would not have entered into the 2002 Agreement with TBW in its present form, price and/or without significant additional collateralized financial protection.[5] GMAC alleges that these non-disclosures were material, TBW withheld the information with the intent of misleading GMAC, GMAC justifiably relied on these non-disclosures, and as a proximate cause of TBW's non-disclosures, GMAC was damaged.[6]

TBW has now filed the instant motion requesting that the Court strike GMAC's 2nd Amended Counterclaim or alternatively dismiss with prejudice Count V – GMAC's claim for fraudulent inducement.

## II.  STANDARD OF REVIEW

In determining the propriety of granting a motion to dismiss, a court must accept all the factual allegations in the complaint as true and evaluate the inferences derived from the facts in the light most favorable to the plaintiff.[7]  In passing on a motion to dismiss under Rule 12(b)(6), the Court is mindful that "[d]ismissal of a claim on the basis

---

[4] *Id.* at ¶ 55.

[5] *Id.* at ¶ 56.

[6] *Id.* at ¶¶ 57-8.

[7] *See e.g.*, Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

of barebone pleadings is a precarious disposition with a high mortality rate."[8] A

complaint should not be dismissed for failure to state a claim unless it appears "beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief."[9] The threshold of sufficiency that a complaint must meet to survive

a motion to dismiss is "exceedingly low."[10]

## III.  DISCUSSION

### A.      Count V Is Plead With Sufficient Particularity

TBW argues that Count V should be dismissed because GMAC has failed to

plead its amended fraud claim with "more particularity" as required by the Court's

previous Order.[11]  The Court previously dismissed without prejudice GMAC's claim for

fraudulent inducement finding the claim inadequate because it failed to satisfy the

specificity requirement of Rule 9(b), Fed.R.Civ.P. (Doc. 100.)

---

[8] Int'l Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv., 400 F.2d 465, 471 (5th Cir. 1968).

[9] Cook & Nichol, Inc. v. The Plimsoll Club, 451 F.2d 505, 506 (5th Cir. 1971)("a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would not be entitled to recover under any state of facts which could be proved in support of his claim").

[10] See Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11th Cir. 1985) (citation omitted).

[11] In a related argument, TBW argues that the Court should strike GMAC's 2nd Amended Counterclaim because rather than pleading "its fraud claim with more particularity" as ordered by this Court, GMAC amended Count V of its counterclaim to assert an entirely new claim for fraudulent concealment.  The Court is not persuaded by this argument.  While GMAC's amended claim is now primarily based upon material omissions, rather than affirmative misrepresentations, this does not mean that GMAC now is asserting an entirely new claim for fraudulent concealment.  Indeed, a fraudulent inducement claim can be based upon material omissions.  See e.g., Advisor's Capital Investments, Inc. v. Cumberland Cas. & Sur. Co., 2007 WL 220189, at *3 (M.D. Fla. 2007).   Moreover, the amended claim is consistent with the Court's previous Order.  Indeed, the Court noted in that Order that it was not clear whether GMAC's fraudulent inducement claim was based on misrepresentations or omissions by TBW. (Doc. 100, page 8.)  Accordingly, to the extent TBW is seeking to strike GMAC's 2nd Amended Counterclaim, that request is due to be **DENIED**.

Rule 9(b) requires a heightened standard of pleading for claims alleging fraud or mistake.[12]   However, this particularity requirement must be read in conjunction with the notice pleading standard of Rule 8 and it is satisfied when the complaint "allege[s] fraud with sufficient particularity to permit 'the person charged with fraud...[to] have a reasonable opportunity to answer the complaint and adequate information to frame a response.'"[13] Moreover, "[w]hile the circumstances of fraud must be alleged with specificity, absolute particularity is not required, especially when some matters are beyond knowledge of the pleader and can only be developed through discovery."[14]  The complaint need only provide a "reasonable delineation of the underlying acts and transactions allegedly constituting the fraud."[15]

Based on a review of GMAC's amended fraudulent inducement claim, the Court is satisfied that GMAC now has pled its claim for fraud with sufficient particularity. GMAC has alleged that the material omissions occurred during negotiations from March 2002 to May 2002 and GMAC has identified at least two of the persons involved in the negotiations.[16]   Moreover, it is now clear that GMAC's fraudulent inducement claim is

---

[12] Specifically, Rule 9(b) provides, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

[13] Arral Industries, Inc. v. Touch Entertainment, Inc., 2000 WL 141269, *3 (S.D. Fla. 2000) (citing Future Tech. Intern., Inc. v. Tae II Media, Ltd., 944 F. Supp. 1538, 1571 (S.D. Fla. 1996) (quoting In Re United States Oil & Gas Litigation, No. 83-1702-AI-CIV, 1988 WL 28544, *2 (S.D. Fla. 1988)). The purpose of the particularity requirement in Rule 9(b) "is to eliminate fraud actions in which all of the facts are learned through discovery after the complaint is filed." Friedlander v. Nims, 755 F.2d 810, 813 n. 3 (11th Cir. 1985).

[14] Livingston v. H.I. Family Suites, Inc., 2005 WL 2077315 (M.D. Fla. 2005.)

[15] Id.

[16] See Doc. 102, ¶52.

based on TBW's alleged omission of material facts and GMAC has identified specific

material facts that TBW allegedly failed to disclose during the negotiation process.[17]

Because GMAC has alleged its claim for fraudulent inducement with sufficient

particularity to permit TBW to "have a reasonable opportunity to answer the complaint

and adequate information to frame a response," TBW's motion to dismiss is due to be

denied on this ground.[18]

### B.      GMAC States a Claim For Fraudulent Inducement

TBW argues that GMAC's claim for fraudulent inducement should be dismissed

because TBW had no duty to disclose the alleged "material omissions" at issue in this

litigation. Under both Florida and Pennsylvania law,[19] omissions are not actionable as

fraudulent misrepresentations unless the party omitting the information owes a duty of

disclosure to the party receiving the information.[20] "[S]uch duty arises when one party

---

[17] GMAC alleges that TBW intentionally failed to disclose the many reasons behind Fannie Mae's decision to terminate its contract with TBW  and identifies seven material facts pertaining to TBW's prior servicing relationship with Fannie Mae and the loan portfolio that TBW allegedly failed to disclose.  See Doc. 102, ¶¶53 & 55.

[18] Arral Industries, Inc. v. Touch Entertainment, Inc., 200 WL 141269, *3 (S.D. Fla. 2000) (*citing* Future Tech. Intern., Inc. v. Tae II Media, Ltd., 944 F. Supp. 1538, 1571 (S.D. Fla. 1996) (*quoting* In Re United States Oil & Gas Litigation, No. 83-1702-AI-CIV, 1198 WL 28544, *2 (S.D. Fla. 1988))). The purpose of the particularity requirement in Rule 9(b) "is to eliminate fraud actions in which all of the facts are learned through discovery after the complaint is filed." Friedlander v. Nims, 755 F.2d 810, 813 n. 3 (11th Cir. 1985).

[19] As explained in the Court's previous order (Doc. 100), in the case of a "false conflict" the court should avoid the conflicts of law question and simply decide an issue under the law of each of the interested states or alternatively, simply apply the law of the state where the court sits. Fioretti v. Massachusetts General Life Insurance Co., 53 F.3d 1228, 1234 n.21 (11th Cir. 1995); Bonar v. Dean Witter Reynolds, Inc., 835 F.2d 1378, 1387-88 and n. 17 (11th Cir. 1988)). Thus, the Court declines to resolve whether to use Florida or Pennsylvania law because the laws of both states regarding this instant motion are substantially similar.

[20] Advisor's Capital Investments, Inc. v. Cumberland Cas. & Sur. Co., 2007 WL 220189, at *3 (M.D. Fla. 2007); *see also*  Mest v. Cabot Corp., 449 F.3d 502, 517 (3rd Cir. 2006).

has information that the other party has a right to know because of a fiduciary or other

relation of trust of confidence between them."[21] In an arms-length transaction, neither

party owes a duty to the other to act for that party's benefit or protection, or to disclose

facts that the other party could have discovered through its own due diligence.[22]

However, where a party in an arm's length transaction undertakes to disclose

information, all material facts must be disclosed.[23]   Indeed, "[e]ven in contractual

situations where a party to a transaction owes no duty to disclose facts within his

knowledge or to answer inquiries respecting such facts, the law is if he undertakes to do

so he must disclose the Whole truth."[24]

Here, GMAC alleges that TBW disclosed some facts regarding the subject

transactions --i.e, that Fannie Mae had terminated its agreement with TBW and had

given TBW an abbreviated time within which to find a buyer – but failed to disclose a

number of material facts related to its prior servicing relationship with Fannie Mae and

to the loan portfolio.  Nevertheless, TBW argues that GMAC's claim still must fail

because GMAC failed to exercise due diligence in investigating TBW's prior servicing

relationship with Fannie Mae and the condition of the loan portfolio.  While it might be

determined ultimately that GMAC failed to exercise due diligence, this factual issue

---

[21] TransPetrol, Ltd. v. Radulovic, 764 So. 2d 878, 880 (Fla. App. Ct. 2000.)  *See also* Friedman v. Am. Guardian Warranty Serv., 837 So. 2d 1165, 1166 (Fla. App. Ct. 2003).

[22] Lanz v. Resolution Trust Corp., 764 F.Supp. 176, 179 (S.D. Fla. 1991) (*citing* Metcalf v. Leedy, Wheeler & Co., 140 Fla 149, 191 So. 690 (Fla. 1939)).

[23] Friedman, 837 So. 2d at 1166; Gutter v. Wunker, 631 So.2d 1117, 1118-19 (Fla. 4th DCA 1994.)

[24] Vokes v. Arthur Murray, Inc., 212 So.2d 906, 909 (Fla. 2nd DCA 1968)(*citing* Ramel v. Chasebrook Constr. Co., 135 So.2d 876 (Fla. 2nd DCA 1962)).

cannot be decided properly on a motion to dismiss.[25]   Accordingly, the Court cannot say

at this stage in the proceedings that GMAC's claim for fraudulent inducement must fail

as a matter of law.

### C.     Gist-Of-The-Action Doctrine And Economic Loss Rule

TBW also argues that "any fraud claim predicated on an alleged omission

relating to loans under the 2002 Agreement is barred by the economic-loss and the gist-

of-the-action doctrines as set forth in Taylor Bean's previous motion."[26]   In general

terms, both of these doctrines bar a contracting party from pursuing a tort claim against

another contracting party where the essential nature of the claim is contractual.[27]   For

the same reasons stated in its previous Order (Doc. 100, pages 4-6), the Court

---

[25] Northrop v. Lease Fin. Corp., 1987 WL 33042, *5 (E.D. Pa. Dec. 17, 1987)(*citations omitted*);
*see also*, In re Pressure Sensitive Labelstock Antitrust Litigation, 2006 WL 433891, *4 (M.D. Pa. Jan 3,
2006); In re Carbon Dioxide Antitrust Litig., 1993 WL 559779, *2 (M.D. Fla. Nov. 17, 1993);

[26] Doc. 110 at 14.

[27] The gist of the of the action doctrine and the economic loss rule, as interpreted
under Pennsylvania law, are substantially similar to the economic loss rule under Florida law. Under the
law of Pennsylvania tort claims are barred under the gist of the action doctrine where the tort claim arises
solely from a contract between the parties and the duties allegedly breached were created and grounded
in the contract itself.  Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 104 (3rd Cir.
2001)(the gist of the action is contractual and fraud claims are barred where "the parties' obligations are
defined by the terms of contracts, and not by the larger social policies embodied by the law of torts.") It
should be noted that although the Pennsylvania Supreme Court has not yet expressly adopted the gist of
the action doctrine, the Superior Court of Pennsylvania and federal courts interpreting Pennsylvania law
have consistently recognized the gist of the action doctrine and have predicted that the Pennsylvania
Supreme Court will also do so. *See* Suburst Paper, LLC v. Keating Fibre International, Inc., 2006 WL
3097771 *1 n.2 (E.D. Pa. 2006).  Pennsylvania courts also recognize the economic loss rule, which
generally "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only
from contract." *See*  Werwinski v. Ford Motor Co., 286 F.3d 661, 671 (3rd Cir. 2002); REM Coal Co., Inc.
v. Clark Equip. Co., 563 A.2d 128 (Pa. Super Ct. 1989). Similarly, under Florida law, the economic loss
doctrine bars a contracting party from pursuing a tort claim against another contracting party where the
essential nature of the claim is contractual. *See* HTP, Ltd. v. Lineas Areas Costarricenses, S.A., 685 So.
2d 1238, 1239 (Fla. 1996); Hotels of Key Largo v. RHI Hotels, Inc., 694 So.2d 74, 77 (Fla. Dist. Ct. App.
1997).

concludes that the economic loss rule and gist-of-the-action doctrine do not bar GMAC's claim in Count V of the 2nd Amended Counterclaim.[28]

TBW also argues that the 2002 Agreement includes an "Entire Agreement" provision which reinforces that any pre-contractual representations are subsumed by the contract.  However, because GMAC's fraudulent inducement claim is based on alleged material omissions and not oral statements, the material omissions would not be subsumed into the contract.  Accordingly, the economic loss rule would not apply to bar GMAC's fraudulent inducement claim.

## IV.  CONCLUSION

For the reasons discussed above, Taylor Bean's Motion To Strike GMAC's Second Amended Counterclaim Or, In the Alternative, To Dismiss Count V Of GMAC's Second Amended Counterclaim (Doc. 110) is due to be **DENIED.**

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on August 6, 2008.

_____

GARY R. JONES
United States Magistrate Judge

Copies to:
    All Counsel

---

[28] While the Court's previous Order (Doc. 100), only discussed the economic loss rule the analysis is also applicable to gist-of-the-action.  *See supra*, footnote 27.