UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

TAYLOR, BEAN & WHITAKER MORTGAGE
CORPORATION, a Florida corporation,

        Plaintiff,

v.                                 Case No.  5:05-cv-260-Oc-GRJ

GMAC MORTGAGE CORPORATION, a
Pennsylvania corporation,

        Defendant.
_____

## ORDER

      Pending before the Court is GMAC Mortgage Corporation's ("GMAC") Motion For Partial Summary Judgment Regarding Damages (Doc. 114) which was supplemented on October 31, 2007 (Doc. 168). Taylor, Bean & Whitaker Mortgage Corporation ("Taylor Bean") has filed a 56(f) Response to GMAC Mortgage Corporation's Motion for Partial Summary Judgment (Doc. 127) and a Sur-Reply Memorandum in Opposition to GMAC's Motion for Partial Summary Judgment. (Doc.163.)

      The Court conducted oral argument and, accordingly, this motion is ripe for review. For the reasons discussed below, Defendant's Motion for Partial Summary Judgment Regarding Damages is due to be **DENIED**.

## I.  STATEMENT OF FACTS

      The nature of the claims between the parties has been discussed at length in several of the previous Court orders and will not be repeated here. This motion for summary judgment focuses on a specific contractual provision in the Purchase and Sale Agreements (the "Agreements") that GMAC entered into with Taylor Bean in 2000 and

in 2002. Under the Agreements, Taylor Bean transferred thousands of mortgage loans that it had originated to GMAC for servicing.[1] GMAC withheld approximately $8,386,000.00 from the purchase price of the 2002 Agreement (the "Holdback Fund").[2]

In its Complaint, Taylor Bean claims that GMAC improperly withheld monies from the Holdback Fund and as a result "Taylor Bean has suffered substantial additional damages as a result of GMACM's refusal to pay the amounts due under the Agreement, including, but not limited to, damages relating to Taylor Bean's inability to utilize the funds in operation and growth of its business as well as the need for Taylor Bean to obtain alternative sources of financing for operation and growth of its business."[3] More specifically, Taylor Bean seeks in excess of $14 million in damages in this case as a result of GMAC's refusal to pay Taylor Bean the monies in the holdback fund.[4]

The Agreements contain a contractual limitation of damage clause which states in relevant part that "[i]n no event will either [GMAC] or [Taylor Bean] be liable to the other party to this Agreement for incidental or consequential damages, including, without limitation, loss of profit or loss of business or business opportunity, regardless of the form of action whether in contract, tort or otherwise."[5]

Based upon the limitation of damage clause in the Agreements, GMAC "requests an order from the Court expressly finding that Taylor Bean cannot recover for any

---

[1] Doc. 1, Complaint, ¶ 8.

[2] Id. at ¶¶ 9-14.

[3] Id. at ¶¶ 16 and 20.

[4] Doc. 116, Ex. C, Plaintiff's Responses To Defendant's Ninth Set Of Interrogatories, Interrogatory #2.

[5] Doc. 116, Exs. A and B, the Agreements.

incidental or consequential damages, including any claims for loss of profit, or loss of business opportunity."

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party.[6] As the Supreme Court held in *Celotex Corp. v. Catrett*,[7] the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove."[8] The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

---

[6] Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).

[7]  477 U.S. 317 (1986).

[8] Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987).

## III.  DISCUSSION

The issue to be determined by the Court is whether the limitation of damage

clause in the Agreements is enforceable and, if so, whether Taylor Bean is barred from

recovering the damages it claims in this case.

### A.  Choice of Law

In the instant motion, the parties agree that Pennsylvania law should apply

because the Agreements contain a choice of law provision that states it "shall be

governed by the laws of the Commonwealth of Pennsylvania." The parties also agree

that if the Court applies Florida law the result would be the same because Florida's

substantive law regarding contractual provisions limiting damages is the same as

Pennsylvania law.

Under Florida choice of law rules applicable to claims for breach of contract,

Florida follows the principle of *lex loci contractus*, which means that the law of

the place where the contract was signed governs the dispute.[9] However, Florida

recognizes an exception to this general rule where the parties have specified a choice

of law in their contract. Where the parties have designated a choice of law in their

contract the will of the parties will govern unless the parties' choice violates the public

policy of the forum state.[10] Here, as under Pennsylvania law, Florida courts routinely

enforce contractual limitation of liability provisions, if reasonable and not the result of

---

[9] Fioretti v. Mass. Gen. Life Ins. Co., 53 F.3d 1228, 1235 (11th Cir. 1995). As a matter of course, the Court applies the choice of law rules of the state in which the Court sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).

[10] Mazzoni Farms, Inc. v. E.I. DuPont de Nemours & Co., 761 So.2d 306, 311 (Fla. 2000).

4

fraud or deceit.[11] Therefore, the application of Pennsylvania law would not violate the public policy of Florida. Accordingly, the Court will apply Pennsylvania law to resolution of the motion.

## B.  The Validity of the Limitation Clause

As a general matter Pennsylvania courts routinely enforce limitation of liability clauses, as here, where the clauses merely place a limit upon the liability of a party or the parties.[12] A court will uphold such a clause if "the limitation is reasonable and not so drastic as to remove the incentive to perform with due care."[13] In other words, limitation of liability clauses are permitted so long as the parties are not immunized from liability altogether.

Federal courts from the Eastern District of Pennsylvania interpreting Pennsylvania law have, however, concluded that under Pennsylvania law these types of clauses while generally enforceable "will not preclude recovery for damages caused by willful or wanton conduct."[14]  For example, in *Maschinenfabrik v. Max Levy Autograph*,

---

[11] Rollins, Inc. v. Heller, 454 So. 2d 580, 583 (Fla. Dist. Ct. App. 3rd  1984), *petition for review denied*, 461 So.2d 114 (Fla. 1985).

[12] New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp., 387 Pa. Super 537, 564 A.2d 919, 924 (1989) ("[U]nder Pennsylvania law, contractual provisions...excluding liability for special, indirect and consequential damages are generally valid and enforceable."); Behrend v. Bell Tel. Co., 242 Pa. Super 47, 72 n. 16, 363 A.2d 1152 (1976), (Behrend I), vacated on other grounds, 473 Pa. 320, 374 A.2d 536 (1977), *rev'd and remanded in accordance with prior opinion*, 257 Pa. Super 35, 390 A.2d 233 (1978); Valhal Corp. v. Sullivan Associates, Inc., 44 F.3d 195, 202-204 (3rd Cir. 1995). See also 13 Pa.C.S.A. 2719(c) (1980) ("Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.").

[13]  Valhal, 44 F.3d at 204.

[14] Polymer Dynamics, Inc. v. Bayer Corp., 2000 WL 1146622, *8 (E.D. Pa. Aug. 14, 200) (holding that  limitations of liability provision did not preclude recovery pursuant to Plaintiff's *intentional tort* claim for fraud); C.P. Cook Coal Co., Inc. v. Browning-Ferris, Inc., 1995 WL 251341, *7 (E.D. Pa. April 26, 1995)

(continued...)

the district court there denied a motion to dismiss a claim for breach of a contract for the sale of goods because the seller's alleged bad faith conduct arguably could have vitiated the limitation on damages clause.[15]  Indeed the *Max Levy* court observed that "[t]he majority of courts which have addressed this issue, have held that bad faith conduct on the part of the seller can prevent enforcement of an otherwise valid limitation of damages clause."[16] The Court concluded that based upon the "inherent logic and reasonableness of this rule" the Pennsylvania courts would not depart from this majority approach.

While the Court recognizes that the district court in *Max Levy* made an "*Erie* guess" as to what view the Supreme Court of Pennsylvania would adopt regarding this issue, the *Max Levy* court does not stand alone.  Beginning with *Valhal Corp. v. Sullivan Associates, Inc.*[17] the Third Circuit noted that Pennsylvania courts have cautioned that a contractual limitation of damage clause extends "only to acts of ordinary negligence and exclude conduct found to be willful, malicious or reckless."[18] Relying upon *Valhal* a judge from the Eastern District of Pennsylvania in *C.P. Cook Coal Co., Inc. v. Browning-*

---

[14](...continued)
(denying summary judgment on the breach of contract claim because "[w]ith the information that has been presented to us by defendant at this point we cannot make such a determination."); Valley Forge Convention & Visitors Bureau, 28 F.Supp. 2d 947, 950 (E.D. Pa. 1998) ("As noted, in its *intentional interference* count plaintiff alleges that defendant's conduct was 'intentional,' 'wanton,' and 'willful.'").

[15] 2002 WL 126634, *5-6 (E.D. Pa. Jan. 21, 2002).

[16] *Id.* at *4 (citations of cases from other jurisdictions omitted).

[17] 44 F.3d 195,

[18] *Id.* at 203 (*citing* Behrend v. Bell Tel. Co., 363 A.2d 1152, 1166 (Pa. Super. Ct. 1976))

*Ferris, Inc.*[19] denied a motion for summary judgment in a breach of contract action where the contract had a limitation of damage clause reasoning that the motion should be denied because there were material issues of fact as to whether the "alleged errors and omissions in the execution of [the defendant's] responsibilities were willful and intentional." Similarly, in *Valley Forge Convention & Visitors Bureau v. Visitor's Services, Inc.*[20] the district court for the Eastern District of Pennsylvania observed that under Pennsylvania law a limitation of liability clause will not preclude recovery for damages caused by willful or wanton conduct. Lastly, in *Polymer Dynamics v. Bayer Corporation*[21] the district court concluded that under Pennsylvania law a limitation of damage clause does not apply to claims of willful and wanton conduct.

Relying on this exception to the usual enforcement of limitation of damage clauses as discussed in *Max Levy*, Taylor Bean contends that the limitation of damage provision in this case is inapplicable "if the trier-of-fact finds that GMAC's failures to abide by the terms of the 2000 and 2002 Agreements were 'willful,' 'intentional,' 'wanton,' 'evasive of the spirit of the bargain,' a result of 'lack of diligence and slacking off,' or a 'willful rendering of imperfect performance.'"

The Supreme Court of Pennsylvania has never squarely addressed this issue. The Supreme Court of Pennsylvania has held, as a general proposition regarding damages in a contract case that "[w]here one party to a contract without any legal justification, breaches the contract, the other party is entitled to recover, unless the

---

[19] 1995 WL 251341 (E.D. Pa. 1995)

[20] 28 F.Supp.2d 947, 950 (E.D. Pa. 1998)

[21] 2000 WL 1146622 (E.D. Pa. 2000)

7

contract provides otherwise, whatever damages he suffered, provided (1) they were such as would naturally and ordinarily result from the breach, or (2) they were reasonably foreseeable and within the contemplation of the parties at the time they made the contract, and (3) they can be proved with reasonable certainty."[22]

The only Pennsylvania case addressing this issue is *John B. Conomos, Inc. v. Sun Co., Inc.*, a case from the Pennsylvania Superior Court, the intermediate appellate court in the state system.[23]  The Court there affirmed the lower court's finding that the defendant breached its duty of good faith and fair dealing - essentially a claim for breach of contract.[24]  The court then turned to the issue of whether the lack of good faith affected the application of a limitation of liability provision under the contract. The court observed that "[a]n unjustified breach of a contract does not subject the breaching party to all remedies recoverable under contract law if the contract provides otherwise."[25] The court concluded that "[n]otwithstanding the characterization of a breach as a bad faith breach or otherwise, the contract may prescribe for the remedies available for such breach. To the extent that the cause of action and remedies remain within the province of contract law, the contract my be binding in the determination of consequences of a breach."[26] Based upon Pennsylvania law that absent fraud or unconscionability, two sophisticated parties should determine the remedies for any breach under the contract,

---

[22] Ferrer v. Trustees of the Univ. of Pa., 575 Pa. 310, 825 A.2d 591, 610 (2002) (quoting Taylor v. Kaufhold, 368 Pa. 538, 84 A.2d 347, 351 (1951)).

[23]  831 A.2d 696, 703 (Pa. Super Ct. 2003).

[24] Id.

[25] Id. at 708.

[26] Id.

the court upheld the limitation of liability clause over the trial court's determination that the defendant "breached the contract in bad faith."[27] While the *Conomos* case does suggest that limitation of liability clauses may be enforceable notwithstanding a bad faith breach the decision is from the intermediate appellate court and stands in stark contrast to the majority view on this issue and runs counter to the four decisions from the Eastern District of Pennsylvania, at least one of which made a fully informed *Erie* guess as to what the Supreme Court of Pennsylvania would say on this issue.

Accordingly, the Court concludes that while Pennsylvania jurisprudence would recognize that a limitation of damages clause in a contract, as here, is enforceable the Pennsylvania Supreme Court if confronted with the issue would hold that bad faith conduct on the part of the breaching party can prevent enforcement of an otherwise valid limitation of damages clause.

## C.    There Are Disputed Issues of Fact Regarding Whether GMAC's Conduct Rises To The Level of Bad Faith

In *Max Levy* the court explained that "[u]nder Pennsylvania law, bad faith conduct includes, but is not limited to: 'evasion of the spirit of the bargain, lack of diligence, slacking off, [and] willful rendering of imperfect performance...'"[28] The Court also recognized that if a misrepresentation was shown, it would meet the definition of bad faith conduct.[29]

---

[27] Id. at 708-09.

[28] Max Levy, 2002 WL 126634, *5 (citing Kaplan v. Cablevision of Pa., Inc., 448 Pa.Super. 306, 318, 617 A.2d 716, 722 (1996)).

[29] Id.

Taylor Bean argues that the conduct of GMAC under the Agreements, as evidenced by the actions of Wes Howland, GMAC's Vice President, is sufficient to establish bad faith. Specifically, Taylor Bean alleges that "[t]o the extent that the 2002 Purchase and Sale Agreement set forth specific contractual requirements for the payment of the balance of the Purchase Price, as well as the purported ability by GMAC Mortgage to offset monies owed to TBW against losses actually incurred, Wes Howland's failure to determine or even inquire as to whether any of these requirements were met clearly amounts to the 'evasion of the spirit of the bargain,' the 'lack of diligence,' the 'slacking off' and 'willful rendering of imperfect performance...'"

In further support of Taylor Bean's argument that GMAC's alleged breach was willful and in bad faith, Taylor Bean points to various evidence in the record including: (1) a letter to Michele Cooper at GMAC Mortgage from GMAC's CFO, Delton G. de Armas,[30] (2) an e-mail from the Director of GMAC Residential Funding Stephen Kleindienst to Wes Holand,[31] (3) GMAC's response to Plaintiff's First Interrogatories,[32] (4) an e-mail communication between Paul Allen of GMAC and Frank Madden of Taylor Bean,[33] (5) the 2002 Agreement,[34] (6) portions of Mr. Howland's September 6, 2007 deposition[35] and (7) an internal e-mail sent by Mr. Howland to several GMAC

---

[30] Doc. 127, Ex. B.

[31] Id. at Ex. C.

[32] Id. at Ex. D, Howland Depo.

[33] Id. at Ex. E.

[34] Doc. 163, Ex. 1.

[35] Id. at Ex. 2.

employees regarding the status of the Taylor Bean transaction.[36]  Based upon this

evidence, Taylor Bean concludes that Mr. Howland's decision to suspend payments

without knowing or conducting a formal investigation into whether the Agreements

permitted such an action lacked good faith.[37]

     GMAC, of course, views the evidence differently. According to GMAC, Taylor

Bean's evidence read together with GMAC's evidence, establishes that GMAC

interpreted the 2002 Agreement and the Bid Letter to authorize its retention of the

Holdback Funds and that GMAC was justified in not releasing the Holdback Funds

because of Taylor Bean's exceedingly high amount of outstanding claims for

repurchases.  GMAC argues that because it believed it had a right to approximately $15

to $16 million in outstanding claims for repurchases arising out of the loans subject to

the 2002 Agreement there was justification for withholding the monies.[38] Further, in

response to Taylor Bean's argument that Mr. Howland failed to conduct any

investigation as part of his decision not to pay the holdback funds, GMAC points out that

Mr. Howland contacted Taylor Bean's CEO Lee Farkas to deal with the outstanding

repurchases and discussed the possibility of the Holdback Fund with other GMAC

---

[36] Doc. 181, Ex. A.

[37] Taylor Bean merely references that during Mr. Howland's deposition, GMAC's counsel elicited testimony that Mr. Howland delegated any investigations as to the status of the loans, but Mr. Howland also answered that investigations were indeed conducted. Howland Depo at pp. 292, line 8  - 294, line 8.

[38] Howland Depo, p. 295, lines 7-17 (stating that when an Investor demands repurchase and Plaintiff fails to disburse funds for this repurchase, GMAC had to satisfy the repurchase claim on its own.; Doc. 174, Ex. D (e-mail exchange between Howland and Barry Bier discussing Howland's choice to withhold portions of the purchase price because there was at least $15 million in outstanding repurchase requests at that time).

employees.[39] Thus, GMAC suggests that while there may be a stark disagreement between the parties as to the legal justification for GMAC's decision to withhold the monies in the holdback fund, it is not bad faith conduct to reasonably interpret the meaning of certain terms of a contract in a manner different from the other party.

Although the Court agrees that as a general proposition actions taken by a party to a contract that are based upon a different but reasonable interpretation of the contract do not constitute bad faith, Taylor Bean's argument goes much further and suggests that GMAC's actions were motivated solely to protect itself from anticipated future losses, and to some extent, to protect GMAC Residential Funding Corporation, which itself was obligated to fund repurchases of some of the loans.  While Taylor Bean may have a formidable challenge convincing a finder of fact that GMAC's conduct rises to the level of bad faith to avoid the effect of the limitation of damage clause, the Court concludes that Taylor Bean has, nonetheless, presented enough evidence at this juncture to create a material issue of fact as to whether GMAC's decision not to pay the holdback funds was sufficiently reckless to constitute bad faith. In viewing the evidence the Court is mindful that as the nonmoving party Taylor Bean must be given the benefit of all reasonable inferences.[40]

Accordingly, the Court concludes that because there are disputed issues of fact as to whether GMAC's failure to pay the holdback funds was in bad faith, the issue appropriately should be resolved by a jury and not by the Court on summary judgment

---

[39] Doc. 174, Ex. E.

[40] *See, e.g.* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

on this record.[41] For these reasons, GMAC Mortgage Corporation's ("GMAC") Motion

For Partial Summary Judgment Regarding Damages is due to be **DENIED**.[42]

        **IT IS SO ORDERED.**

        **DONE AND ORDERED** in Ocala, Florida, on August 7, 2008.

**GARY R. JONES**
United States Magistrate Judge

Copies to:
    All Counsel

---

[41] The Court notes that while Taylor Bean did not argue in its response to GMAC's motion for partial summary judgment that the damages it seeks in the case are not excluded by the limitation of damage clause in the Agreement, Taylor Bean's expert Dr. Davis, has provided a report detailing Taylor Bean's claimed damages in this case. According to Taylor Bean, Dr. Davis' report calculates Taylor Bean's direct damages and not Taylor Bean's incidental and consequential damages. Taylor Bean suggests that direct damages are not barred by the limitation of damage clause and that the determination of whether damages are direct depends upon whether the damages were contemplated by the parties and thus foreseeable, which is normally a question of fact for the jury. *See,* Doc. 270, pp. 2-12. This argument while not dispositive of the Court's ruling, underscores the fact that there are disputed issues of fact not only with regard to whether GMAC's conduct was sufficient to avoid the operation of the limitation of damage clause but also as a threshold matter whether the damages Taylor Bean seeks in this case are barred by the limitation of damage clause even if GMAC's conduct is determined not to be willful and in bad faith. Moreover, while the argument has not be made by Taylor Bean the limitation of damage clause in the Agreements is mutual and therefore if enforceable may be applicable to any claims by GMAC for damages. Thus, the old adage "what is good for the goose is good for the gander" could be applicable to the damage claims by both parties to the extent that the damages are determined to be incidental or consequential damages.

[42] Because Taylor Bean has filed its Sur-Reply and the Court has considered it, Taylor Bean's Motion For Leave To File Sur-Reply In Camera (Doc. 138) is due to be **DENIED as moot** and Taylor Bean's Motion For Leave To File, Instanter, Sur-Reply To GMAC Mortgage's Motion For Partial Summary Judgment Regarding Consequential Damages (Doc. 164) is due to be **GRANTED**. Further, because the Court has considered the exhibit, the Motion By Taylor Bean & Whitaker Mortgage Corporation To Bring To The Court's Attention A Recently Discovered Document Relevant To Consequential Damages (Doc. 181) is due to be **GRANTED**.